UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN F. D'AMICO,

      Plaintiff,

v.                                                 Case No. 3:20-cv-992-MMH-MCR

J. ECKERT,

      Defendant.
_____

## ORDER

### I. Status

Plaintiff Steven F. D'Amico, an inmate of the Florida Department of Corrections (FDOC), is currently proceeding on a Third Amended Complaint (Doc. 19; TAC) filed on July 24, 2020 (mailbox rule) against Correctional Officer J. Eckert.[1] Before the Court is Defendant's Motion for Summary Judgment (Doc. 60; Motion).[2] The Court advised D'Amico of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an

---

[1] The Court previously dismissed all claims against "Unknown Dept. Staff." See Order (Doc. 66).

[2] Defendant filed several exhibits in support of his Motion. See Docs. 60-1 to 60-6; Doc. S-67.

opportunity to respond to Defendant's Motion. See Order (Doc. 29); Summary Judgment Notice (Doc. 61). D'Amico filed a Sworn Opposition to Defendant's Motion for Summary Judgment (Doc. 72; Response). The Motion is ripe for review.

## II. D'Amico's Third Amended Complaint

According to D'Amico, on June 3, 2019, Defendant was assigned to C-dorm at the Reception and Medical Center (RMC) where D'Amico was housed. See TAC at 5. That morning, Defendant "gave a speech to prisoners in C-dorm," and while looking directly at D'Amico and smirking, stated, "'Don't come to me if your [sic] getting your a\*\* beat for owing money.'" Id. D'Amico alleges that "gang members with ties to [Defendant] and other RMC officers had attempted to extort pain pills received by D'Amico for cancer pain, under [the] false pretense [that] D'Amico owed them money." Id.

D'Amico went to the law library and returned to C-dorm around 2:30 p.m. Id. at 6. He proceeded directly to the bathroom and "next regained consciousness to find himself on [the] floor behind [the] center island of sinks," while he was being "punched and kicked by several young black gang members." Id. D'Amico alleges that he "called out loudly for help from [Defendant] in [the] officers['] station next to it," but Defendant "did not respond." Id. According to D'Amico, the officers' station is only a "few feet" from

2

the bathroom and is separated "by a wall of jalousie windows missing several panes of glass." Id.

D'Amico left the bathroom while the "[g]ang members flanked [him] and punched him in [the] back[.]" Id. One of the gang members demanded that D'Amico "'pay up,'" and they "surrounded and followed D'Amico back to his bunk." Id. at 6-7. The gang members tried to take D'Amico's property, but he prevented them from doing so by standing on it. Id. at 7. One of the gang members instructed D'Amico to exit C-dorm when dinner was announced. Id. When D'Amico returned later, all of his property had been stolen. Id.

According to D'Amico, Defendant "observed D'Amico surrounded by several menacing black gang members, being forcibly escorted out of C-dorm." Id. at 7. D'Amico alleges that he was "injured and distressed after having been knocked unconscious, severely beaten, and attempting to defend his property locker from these escorts only moments earlier." Id. He contends that he "was dazed and his lower back and both knees were injured." Id. He asserts that another inmate advised Defendant "about this dangerous situation," and it was obvious that D'Amico was in distress. Id. at 7, 9. In fact, according to D'Amico, Defendant "looked directly at D'Amico and gang members he knew or should have known did not belong in his dorm and stated: 'take it someplace else.'" Id. at 9. D'Amico asserts that the "group of prisoners did take it someplace else where D'Amico had his jaw bone broken." Id.; see id. at 11.

3

D'Amico further alleges that these gang member inmates were affiliated with Defendant, and Defendant "and other RMC officers have ordered hits against prisoners they consider snitches." Id. at 11. He asserts that Defendant "was fully aware gang members at RMC intended to do D'Amico harm before the attacks at issue," but Defendant failed to take any action. Id. He continues, "These affiliations between [Defendant] and other RMC officers[] and gang members are [a] major source of contraband introduced into prison. That was why [Defendant] gave his speech on June 3, 2019." Id. He further alleges that Defendant "knew about June 3, 2019 attacks beforehand because they were orchestrated by unknown RMC prison staff associated with [Defendant]." Id. at 13.

D'Amico asserts that as a result of Defendant's and unknown RMC staff's alleged misconduct, D'Amico suffered "permanent dental and oral problems," a worsening of his prior back injury and post-traumatic stress disorder. Id. D'Amico alleges violations of his First and Eighth Amendment rights, the Americans with Disabilities Act, and various Florida statutes. Id. at 17. He seeks "[p]roper medical care for [his] jaw, back, . . . shoulder, and eyes"; "[r]eimbursement for litigation and lost property costs"; and monetary damages. Id.

### III. Discussion

When a defendant raises a failure-to-exhaust defense in a motion for summary judgment, the Court must treat the motion as a motion to dismiss, because the determination of whether an inmate exhausted his available administrative remedies is a matter of abatement. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). For the reasons set forth below, the Court finds that D'Amico failed to exhaust his administrative remedies prior to filing this case and the case is due to be dismissed on that basis. As such, the Court need not address Defendant's summary judgment arguments.

### A. Parties' Positions Regarding Exhaustion

In the TAC, D'Amico alleges that he exhausted his administrative remedies prior to filing this case. He states:

> D'Amico filed formal grievance 1906-209-105 to RMC Warden Edwards on June 23, 2019. Edwards was notified the reason for misconduct of [Defendant] was retaliation for complaints filed by D'Amico. RMC Major McGee[] responded by returning grievance without action. D'Amico appealed to Secretary, Mark Inch, 19-6-25781. This appeal explained willful negligent behavior of [Defendant] was retaliation for grievance filed against Sergeant Deas that was referred to Office of Inspector General for Department. D'Amico alleged RMC staff orchestrated June 3, 2019 attacks in reprisal for complaints against RMC staff by D'Amico. Again, no action was taken by Inch or OIG.

TAC at 15.

According to Defendant, D'Amico's exhaustion efforts failed to properly comply with the FDOC grievance procedures. See Motion at 7-12. Defendant argues that D'Amico was required to first submit an informal grievance. Id. at 10. Instead, D'Amico attempted to bypass the informal grievance step by filing a formal grievance labeled as a "grievance of reprisal." See id. at 10-11. However, D'Amico's formal grievance was returned without action for non-compliance with the grievance procedures. See id. at 11-12. Likewise, D'Amico's grievance appeal was returned without action. See id. Thus, Defendant contends that D'Amico failed to properly exhaust his administrative remedies.

In support of Defendant's position, he submitted copies of D'Amico's relevant grievances. On June 23, 2019, D'Amico authored a formal grievance (1906-209-105) about the incidents alleged in the TAC. See Doc. 60-3 at 7 (duplicate found at id. at 4). At the top of the formal grievance, D'Amico wrote: "Reprisal by Officer J. Eckert," and he stated:

> This request for administrative remedy for reprisals against grievant by Officer Eckert for grievant[']s complaints filed against Sgt. Deas (#1905-209-141; 1905-209-140, etc.).
>
> On 6-3-19 Eckert was assigned to C-dormitory at RMC main. He came into C-2 side and instructed prisoners not to come to him if you are getting your [sic] a** beat up. [T]hat afternoon grievant went to P.M. call out at law library and returned at [around] 2:30 P.M. He went directly into bathroom to urinate.

6

> While at urinal he was punched from behind and knocked uncon[s]cious. He fell down seriously injuring his knees, especially his right. There was a camera right above wall and doorway of bathroom.
>
> Grievant woke up to 3 or 4 young black "G" gang members kicking [and] punching him. Short one said "you better pay up," as they beat grievant. During beating several attempts to stand were made, but grievant was beaten down each time. He called out for help and was ignored by Eckert. When he was allowed to leave bathroom, main attacker demanded everything in grievant[']s locker. Grievant went to his bunk 21405 and refused [to] open his locker. He even stood on it to stop attackers from taking his property.
>
> At [around] 3 PM C Dorm went to dinner. As he was leaving dorm various prisoners attempted to persuade him to just pay extorsion to attackers. Eckert observed grievant[']s situation and ordered him to "take it someplace else." Grievant was escorted to back window of F-dorm to talk and was punched from behind having his jaw broken.

Id. at 7 (some capitalization omitted).

On June 26, 2019, D'Amico received the following response: "This grievance is not accepted as a grievance of reprisal in that you have not shown that you have suffered any form of reprisal from the actions of staff in submitting grievances. . . . Your request for administrative remedy is in non-compliance with the Rules of the Department of Corrections, Chapter 33-

7

103.014(f), (g)[.]"³ Id. at 8. The response further advised D'Amico that if he was within the allowable time, he may submit an informal grievance. Id.

Instead of filing an informal grievance per the FDOC's directive,⁴ D'Amico filed an appeal (19-6-25781):

> This is a[n] appeal of formal 1906-209-105, returned w/o action by Major McGee. Grievant alleged Officer J. Eckert announced not to come to him if you are getting beat up. Eckert looked directly at grievant while he made speech. Grievant asserts RMC staff, thr[ough] black laundry man (T), arranged for grievant to get beat up by gang members in reprisal for grievances against Sgt. Deas, which were referred to O.I.G. for investigation. Eckert worked C-dorm on 6-3-19 due to his willingness to retaliate against grievant for grievances against Deas. Major McGee cited FAC 33-103.002(9) which defines a grievance of reprisal as a grievance submitted alleging staff have or threatened to take retaliatory action for good faith participation in grievance procedure. Grievant a 59 y[ea]r old cancer patient called out loudly for help

---

³ See Fla. Admin. Code r. 33-103.014(f) ("The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint."); Fla. Admin. Code r. 33-103.014(g) ("The grievance did not have the attachments required: informal grievance and response, except as allowed for in paragraphs 33-103.006(3)(a) through (h), F.A.C., or the formal grievance and response, except as provided for in subsection 33-103.007(6), F.A.C.").

⁴ Although D'Amico was outside the timeframe for timely filing an informal grievance, he could have sought an extension of time to file an informal grievance. See Fla. Admin. Code r. 33-103.011(2) ("An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner. The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in rule 33-103.014, F.A.C.").

8

> while he was getting beat up in C-dorm bathroom, and was ignored by Eckert. Eckert also observed grievant exiting dorm surrounded by menacing gang members, and merely stated "take it someplace else." Eckert[']s deliberate indifference towards serious danger posed to grievant by gang was a retaliatory action. Not taking action where action was warranted is a retaliatory action. Eckert violated FAC 33-208.002(8), (10), [and] (24); 33-302.101(6); and Eighth Amendment U.S. Const. Grievant was severely injured several times during 2.5 y[ea]rs at RMC receiving cancer treatment. RMC staff as well as Secretary's Office refused to or failed to protect and safeguard grievant's person and personal property numerous times. Major McGee's response demonstrates RMC staff's unwillingness to faithfully administer their responsibilities and oath of office. Please investigate and take appropriate action.

Id. at 6. The appeal was "returned without action" because the appeal was "in non-compliance" with the grievance procedure as his "grievance at the institutional level was determined to be in non-compliance." Id. at 5.

In D'Amico's Response, he contends that he properly bypassed the informal grievance step because he was submitting a grievance of reprisal. Response at 5. He argues that "Major McGee incorrectly stated rules required [D'Amico] to submit a[n] informal grievance," and "McGee directly contradicted Rule 33.103.006(3)(c)," which permits an inmate to bypass the informal grievance step if he is filing a grievance of reprisal. Id.

9

## B. Governing Legal Authority Regarding Exhaustion

The Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374. Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024. . . .

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082.[6] First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

---

[6] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

11

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).[7]

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See Fla. Admin. Code r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code r. 33-103.007.

Under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.005(1); 33-103.006(3). These

---

[7] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

circumstances include a "grievance of an emergency nature, grievance of reprisal," and a "medical grievance." Fla. Admin. Code r. 33-103.005(1). A grievance of reprisal is defined as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure." Fla. Admin. Code Ann. r. 33-103.002(9).

Additionally, an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code r. 33-103.007(3). Emergency grievances, grievances of reprisal, or grievances regarding sexual abuse when the abuse is alleged to have been committed by the Warden of the institution where the inmate is currently housed are some of the types of "direct grievances" that may be filed with the Office of the Secretary. See Fla. Admin. Code r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of and responses to grievances. Generally, the following time frames apply. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. See Fla. Admin. Code r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code r. 33-103.011(1)(b). Similarly, grievance

13

appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See Fla. Admin. Code r. 33-103.011(1)(c). Likewise, a grievance of reprisal or direct grievance must be received within 15 calendar days from the date on which the incident occurred. Fla. Admin. Code r. 33-103.011(1)(b)(2), (d). As to response times, following receipt of the grievance, a written response to an informal grievance must be completed within 15 calendar days; the reviewing authority shall take action and respond to a formal grievance within 20 calendar days of receipt; and the Office of the Secretary has "30 calendar days from the date of the receipt of the grievance" in which to provide a response to a direct grievance and 15 calendar days to respond to an emergency grievance. Fla. Admin. Code r. 33-103.011(3)(a)-(d).

### C. Analysis

The parties agree that D'Amico filed a formal grievance and an appeal relating to the actions underlying the claims in this case. The only dispute is whether those grievances were properly returned without action for failure to comply with the grievance procedures. Upon review, the Court finds at the first step of the Turner analysis, even taking D'Amico's assertions as true, that D'Amico did not properly comply with the grievance procedures and thus he failed to exhaust his administrative remedies prior to filing this case.

D'Amico bypassed the informal grievance step and submitted to the Warden a "grievance of reprisal." However, while D'Amico labeled his grievance as one of "reprisal" and indicated that he was filing the formal grievance to address "reprisals against [him] by [Defendant] for [D'Amico's] complaints filed against Sgt. Deas," D'Amico failed to include any facts showing how the June 3, 2019 incident was retaliation for his prior grievances. See Fla. Admin. Code Ann. r. 33-103.002(9) (defining a grievance of reprisal as "[a] grievance submitted by an inmate alleging that staff have taken or are threatening to take retaliatory action against the inmate for good faith participation in the inmate grievance procedure"). Indeed, D'Amico did not allege any connection between his prior grievances and Defendant's alleged actions. Thus, as noted in the response to the formal grievance, D'Amico failed to provide a valid reason for bypassing the informal grievance step. See Doc. 60-3 at 8 (citing Fla. Admin. Code r. 33-103.014(f) ("The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable.")). Therefore, his formal grievance did not qualify as a "grievance of reprisal," and Major McGee, on behalf of the Warden, properly returned it without action.[8]

---

[8] The Court notes that even if D'Amico's formal grievance was accepted as a grievance of reprisal, it was untimely. An inmate must file a grievance of reprisal within 15 calendar days from the date on which the incident being grieved occurred. See Fla.

15

Likewise, D'Amico's grievance appeal, although it contained some additional assertions, was properly returned without action because his "grievance at the institutional level was determined to be in non-compliance with the requirements of the rule." Doc. 60-3 at 5. Thus, D'Amico failed to properly exhaust his administrative remedies as he did not follow the FDOC's grievance procedures.[9] See Woodford, 548 U.S. at 90.

This case is distinguishable from Dimanche, 783 F.3d at 1204, where the Eleventh Circuit found that the Secretary improperly returned a direct grievance without action. In Dimanche, the plaintiff identified his direct grievance as a grievance of reprisal and explained his reasons for bypassing the informal and formal grievance steps. Id. at 1208-09, 1211-12. The plaintiff indicated that he feared for his life and had been "gassed," issued disciplinary reports for filing grievances in the past, and threatened with being gassed to death if he wrote another grievance. Id. He described the retaliatory actions of "the colonel," "the major," and a named captain and correctional officer, and

---

Admin. Code r. 33-103.011(1)(b)(2). The incident occurred on June 3, 2019, and D'Amico authored his formal grievance on June 23, 2019.

[9] D'Amico did not try to classify the grievance appeal as a direct grievance to the Secretary. Even if he had, the "direct" grievance would have been untimely, see Fla. Admin. Code r. 33-103.011(1)(d) (requiring direct grievances "be received within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred"), and D'Amico's vague and conclusory assertions would not have qualified as a "grievance of reprisal" that could be filed directly with the Secretary.

16

asked the Secretary to transfer him because it was "only a matter of time before [he was] set up for another false D.R. and . . . sent to C.M. to be gassed to death." Id. at 1211.

The Eleventh Circuit concluded that the Secretary improperly returned the direct grievance without action because the plaintiff clearly identified the grievance as a grievance of reprisal, explained that he had been "gassed" for writing grievances, identified the acting warden and inspector as well as other individuals who had retaliated against him, and described being threatened with being "gassed to death" if he wrote more grievances. Id. at 1212-13. Thus, the Eleventh Circuit determined that the plaintiff's failure to pursue his grievances at the institutional level did not bar his complaint for failure to exhaust. Id. at 1214.

Here, although D'Amico used the appropriate form for filing a formal grievance and stated in a conclusory fashion that he was filing it due to reprisal by Defendant,[10] D'Amico's reasoning for bypassing the informal grievance step was insufficient. He failed to describe how Defendant's alleged actions were done in reprisal for grievances D'Amico previously filed about Sergeant Deas.

---

[10] The instructions on the form advise an inmate that he "must indicate a valid reason for not initially bringing his grievance to the attention of the institution." Doc. 60-3 at 7. The instructions further advise that "[i]f the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be retuned to the inmate for processing at the institutional level." Doc. 60-3 at 7.

17

See generally Gipson v. Renninger, 750 F. App'x 948, 950, 952-53 (11th Cir. 2018) (finding the Secretary properly returned without action a direct grievance, because the inmate's statement that he "believe[d] that there will be some adverse actions (retaliations) if the officers are placed on notice at the institutional level,'" did not qualify as an emergency grievance; the plaintiff "failed to show he was subject to substantial risk of personal injury," and the direct grievance did not qualify as a grievance of reprisal because it "lacked factual support for his allegations of threats of retaliatory action by prison staff"). As such, although D'Amico filed a formal grievance and appeal, he did not properly follow the grievance procedures, and thus he failed to exhaust his administrative remedies prior to filing this case.

Accordingly, it is

**ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. 60) is **GRANTED to the extent** it seeks dismissal of this case for D'Amico's failure to exhaust his administrative remedies.

2. This case is **DISMISSED without prejudice** for D'Amico's failure to exhaust.

3. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of February, 2022.

MARCIA MORALES HOWARD
United States District Judge

JAX-3 1/31
c:
Steven F. D'Amico, #L58304
Counsel of Record